## Cincinnati, New Orleans & Texas Pacific Railway Co. v. Rednower, et al.

(Decided October 21, 1910.)

### Appeal from Fayette Circuit Court.

Contract—Unloading Coal From Cars on Track—Damages for Breach—Appellees claim they made a contract with appellant to unload all the coal received by the appellant company at Lexington, within a certain time named, at 14 cents per ton. Appellant contends the contract only embraced the coal then standing on its tracks ready to be unloaded, estimated at 500 cars. Held that the question of law growing out of the facts proven were fairly given to the jury, a careful reading of the record convinces us that the verdict and judgment awarding appellee $2,000.00 damages were warranted both by the facts and the law.

THORNTON & JOHNSTON for appellant.

ALLEN & DUNCAN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE BARKER—Affirming.

This action involves a breach of a contract between appellees and appellant for unloading coal in Lexington, Kentucky. In the trial below a verdict was rendered in favor of appellees for damages in the sum of two thousand dollars, and of the judgment based upon this verdict the appellant is now complaining.

Briefly, the facts are as follows: In July, 1907, the appellant railway company had a large number of cars of coal on its tracks and switches on the Lexington Division which it was desirous of having unloaded at its yards in that city. Labor was scarce and uncertain, and appellant was liable for heavy demurrage on the various cars in which the coal had been shipped from mines on other lines than its own. It was very important, then, that the coal should be unloaded as early as possible and the cars released. C. E. Rickey, the superintendent of the division, and his chief clerk, L. H. Conger, talked the

matter over, and, as a result, Rickey concluded to try and secure some one to take the contract of unloading the cars of coal. With this in view he sent the following telegram to one of his agents: "Lexington 9. C. E. Nelson.—Please see Billiter today and ask him if he wants to bid on unloading coal for storage in pile at Lexington. Have 500 cars on hand now and will probably have 1,000 more to store at this point. C. E. Rickey." This telegram was shown to Billiter, who was a contractor, but he did not desire the contract. He showed the telegram to the appellee, Rednower, who went to see Rickey at his office in order to secure the contract. Rickey was in Cincinnati, but his chief clerk, L. H. Conger, was in charge of the office. Conger at once said he had no authority to make a contract, but he talked the matter over with Rednower, who made a proposition to unload the coal at eighteen cents per ton. Conger undertook to be the medium between Rickey in Cincinnati and Rednower in Lexington. He telegraphed to his chief the proposition made by Rednower. In response he received a telegram that Rednower's price was entirely too high, and told Conger to try and get Rednower to accept the contract at twelve and one-half cents per ton. This price Rednower rejected as being too low, but said that if the railway company would give him the contract to unload all the coal which it proposed to store at Lexington between that time and the 31st of January following, he would take it at fourteen cents per ton. This proposition was telegraphed to Rickey and the following reply was received: "July 16th. Close with Rednower at fourteen cents, and see that everything is done to keep him going to the limit when he gets started. C. E. R." A verbal contract was then made by Conger with Rednower, who at once proceeded to unload the cars of coal then on hand, and there were delivered to him under the contract, and he unloaded, three hundred and twenty-nine cars, for which he was paid the contract price. Thereafter the appellant company refused to deliver any more cars to him under the contract, but afterwards received and unloaded, itself, during the contract time one thousand and forty-four cars of coal.

The difference between the parties in their respective interpretations of the contract is this: Appellees claim that they made a contract with Rickey, through Conger, to unload all of the coal of the appellant road which was to be stored at Lexington within the contract time be-

fore mentioned; whereas, the appellant claims that it only made a contract with Rednower to unload the cars of coal then standing on its tracks ready to be unloaded and which were estimated to be as many as five hundred cars. This was a pure question of fact, and undoubtedly there is evidence in the record to support both theories. But we believe, as the jury evidently believed, that the weight of the evidence conduces to show that Rickey, through Conger, his clerk, agreed with Rednower that if he would take the contract for unloading the coal at the price of fourteen cents per ton, he should have the unloading of all the coal which was to be stored in Lexington within the contract period mentioned. There is great reason to believe that Rednower would not have accepted a contract to unload only the number of cars then on the tracks. The unloading of coal was not in his line of contracting. In order to do the work he had to organize a force of laborers, buy tools and implements, and prepare to keep his men during the time they were at work. This entailed upon him a very considerable outlay, both of money and time, and it is not reasonable to suppose he would have done this in order to secure the contract for unloading so small a number of cars as were delivered to him. He impressed upon Conger the fact that he could afford to take the contract at the low price of fourteen cents only upon the condition that he was to have the unloading of all the coal which appellant was proposing to store in Lexington. There is little doubt that all of the parties believed that there would be not less than one thousand five hundred cars in all to be unloaded, and the subsequent facts fully justified this estimate, as the record shows that there were unloaded at Lexington, if not quite that number, very nearly that many.

We think there is no doubt whatever that Conger was fully authorized by Rickey to make the contract with Rednower, or, at least, we think Rednower was led to believe he had this authority. Rickey was not dealing with Rednower directly. He was in Cincinnati and telegraphed his side of the interview to Rednower through Conger, who was his chief and confidential clerk. Rednower had a right to believe that whatever Conger told him came direct from Rickey. Rickey was the superintendent, and it is conceded that he had ample power and authority to make any contract concerning the unloading of the coal that he chose; and when he undertook to

contract with Rednower through Conger, he was bound by what Conger said. This being true, the jury had a right to believe that what Rednower and his witnesses testified as to the terms of the oral contract with Conger was correct, and certainly all of the surrounding circumstances tend to substantiate Rednower's theory of the contract.

The question of law growing out of the different theories of the parties as to the facts were fairly placed before the jury in the instructions of the court. A careful reading of the record convinces us that the verdict and judgment of the court were fully warranted both by the facts and the law.

Judgment affirmed.